**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF NEW CASTLE COUNTY, a corporation organized and existing under the laws of the United States of America, Plaintiff-Appellant,**

v.

**NATIONWIDE MUTUAL FIRE INSUR-ANCE COMPANY, a corporation of the State of Ohio, Defendant-Appellee.**

Supreme Court of Delaware.

Submitted: March 8, 1983.

Decided: May 9, 1983.

David C. McBride (Argued) and Frederick W. Iobst, Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff-appellant.

Richard E. Poole (Argued) and David J. Baldwin, Potter, Anderson & Corroon, Wilmington, for defendant-appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

HORSEY, Justice:

First Federal Savings and Loan Association of New Castle County ("First Federal") appeals Superior Court's denial of First Federal's motion for summary judgment and its grant of summary judgment for Nationwide Mutual Fire Insurance Company ("Nationwide") on its cross-motion.

The Court held that First Federal's suit on Nationwide's policy was time barred by the twelve month suit limitation provision of Nationwide's policy.

First Federal claims the Court erred in not granting summary judgment in its favor on either of two grounds: (a) that Nationwide was estopped as a matter of law by its conduct from relying on its contract limitations; or (b) that the policy's suit limitation provision should be construed as running from the date of Nationwide's denial of First Federal's claim rather than from the date of the fire loss. Alternatively, First Federal claims that if Nationwide is not estopped as a matter of law from invoking its policy limitations, the Court erred in granting Nationwide's motion for summary judgment on the ground there was a triable issue of estoppel. First Federal also seeks reversal contending Superior Court abused its discretion in denying its motion for reargument based primarily on this Court's decision in *Allstate Insurance Co. v. Spinelli,* Del.Supr., 443 A.2d 1286 (1981).

The pertinent facts are these: On February 9, 1980, Nationwide insured premises, then under foreclosure by First Federal as mortgagee, were partially damaged by fire. Nationwide's policy suit limitation provision states:

> 8. *Suit Against Us.* No action can be brought unless there has been compliance with the policy provisions and the action is started within one year after the occurrence causing loss or damage.

Early the following month, First Federal and Nationwide first discussed the fire loss and First Federal's claim status as mortgagee. Nationwide stated that an arson investigation was underway, but Nationwide added, "Don't worry, First Federal will be covered in any instance." In May, First Federal informed Nationwide that it had acquired title to the premises. It was agreed that First Federal was entitled to "any proceeds for the fire damage"; and First Federal requested a status report on its claim from Nationwide. In late May, Nationwide retained Delaware counsel to handle further negotiations and, in September, First Federal referred its claim to Del-

aware counsel for handling.* Thereafter, all communications between parties were through counsel. In late July, Nationwide asked First Federal to submit "an itemized statement indicating what the bank claims is due it . . ."; and Nationwide expressed the hope of an early settlement. In September, First Federal submitted specific alternative cash settlement offers (dependent upon whether title to the premises remained with First Federal or was to be transferred to Nationwide). By letter of November 11, Nationwide rejected First Federal's settlement offers *and* submitted what amounted to a counter-offer, stating, "Nationwide determines the actual cash value of the dwelling to have been $18,-485.78 and is willing to settle on that basis." First Federal implicitly rejected the settlement offer by letter response of December 2, in which it stated:

> Even though [our Contractor's] estimate . . . is in excess of First Federal's offer to settle in the amount of $25,000.00, we are *not* increasing our demand *nor* will we decrease same. First Federal will stand firm by their offer to settle in the amount of $25,000.00 . . . .
>
> I can't stress too much, that time is of the essence. *Please* respond as soon as possible. (emphasis in original).

Nationwide never responded to First Federal's December 2 letter; nor did Nationwide respond to two follow-up letters from First Federal, one dated January 8, 1981 and the other dated February 9, 1981. In its letter dated February 9 (the anniversary date of the fire loss), First Federal's attorney stated:

> Not having received any response from you re the above, I have been instructed at this time to initiate the appropriate legal action.

Yet First Federal did not file suit on the policy until May 11, 1981, 15 months after the fire loss.

We find that Superior Court properly denied First Federal's motion for summary judgment. This Court's recent decision in

---

* It should be noted that during this period other counsel represented both First Federal and Nationwide. Counsel of record in this Court were first retained by their respective clients several months after suit had been filed in the court below.

*Closser v. Penn Mutual Fire Insurance Co.,* Del.Supr., 457 A.2d 1081 (Horsey, J., 1983) forecloses First Federal's policy limitation construction. In *Closser,* we construed a casualty insurance suit limitation provision indistinguishable from Nationwide's provision as running from the date of the casualty. In so holding, we rejected the contention, here made, that the contract limitation should be construed as not commencing to run until the insurer has informed the insured of the rejection of his claim for coverage benefits. Appellant conceded at oral argument that *Closser* is dispositive of its policy construction argument.

There is no merit to First Federal's contention that Nationwide's failure to respond to the insured's letter offer of December 2, 1980 estopped Nationwide from invoking its twelve month policy limitation on suit. First Federal's letter was written over two months before expiration of the twelve month suit limitation and followed Nationwide's November 11, 1980 letter offer of $18,485.78 in settlement of the policy claim. First Federal's December 2 letter states, in pertinent part:

> In reply to your letter of November 11, 1980, I am enclosing herewith estimate from ... Contractor ... in the amount of $28,000.
>
> Even though this estimate from them is in excess of First Federal's offer to settle in the amount of $25,000, we are not increasing our demand nor will we decrease same. First Federal will stand firm by their offer to settle in the amount of $25,000. I believe that if you will take this matter up with your client, they will then agree to settle. I can't stress too much, that time is of the essence. Please respond as soon as possible. (underlining as contained in letter).

The December 2 response of First Federal's attorney can only be reasonably construed as a rejection of Nationwide's offer and confirmation of First Federal's previous offer to settle for $25,000.

█ First Federal, by invoking estoppel in response to Nationwide's limitation defense, has the burden of proof of estoppel. *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.,* D.Del., 405 F.Supp. 147, 151 (1975); aff'd mem., 3d Cir., 588 F.2d 819 (1978). First Federal is not relieved of that burden merely because Nationwide has moved for summary judgment on its limitation defense. The question then becomes whether a rational trier of fact, viewing the facts in the light most favorable to the non-moving party, including any reasonable inferences therefrom, could find evidence to invoke an estoppel.[1]

█ Superior Court correctly stated the law of estoppel which is applicable to this case.

> The doctrine of estoppel, as it applies to the actions of an insurer, has been said to consist of misleading conduct by or on behalf of the insurer which is relied upon by the insured to his detriment. *Ottendorfer v. Aetna Insurance Company,* Del. Supr., 231 A.2d 263 (1967). In effect, the principal of estoppel prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense.

*Accord Closser v. Penn Mutual Fire Insurance Co., supra; Betty Brooks v. Ins. Placement Facility,* Del.Supr., 456 A.2d 1226 (1983); see also Anno: *Insurer—Waiver—Contractual Limitation,* 29 A.L.R.2d 636 § 8 (1953), 28–31 A.L.R.2d Later Case Service at 272 (1981).

Additionally, in *Employers' Liability Assurance Corp. v. Madric,* Del.Supr., 183 A.2d 182 (1962), Chief Justice Southerland noted:

> [E]stoppel is a rule that in the interest of justice suppresses the truth. One who

---

1. Having moved in Superior Court for summary judgment on the ground that there were no genuine issues of material facts, First Federal cannot now take a contrary position and, indeed, does not. Hence, no issue is presented as to whether Nationwide has met its burden of establishing that no question of fact exists. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680–81 (1979); *Baoust v. Kraut,* Del.Supr., 377 A.2d 4, 7 (1977).

asserts an estoppel must show that he was ignorant of the truth; "and he must have been permissibly ignorant thereof." 183 A.2d at 188.

■ First Federal's contention that Nationwide's silence was sufficient to create an estoppel is without support in Delaware decisional law. Indeed, the law is to the contrary. *Ottendorfer v. Aetna Insurance Company,* Del.Supr., 231 A.2d 263 (1967).

> If the insured relies upon estoppel in order to avoid the consequence of noncompliance with the condition [a policy's one year period of limitation on suit], he must prove misleading conduct of the company and reliance upon that by him to his injury. *Gribble v. Royal Insurance Co., Ltd.,* 3 Storey 109, 165 A.2d 443.

231 A.2d at 265.

*See also Murray v. Lititz Mut. Ins. Co.,* Del.Super., 61 A.2d 409 (1948) holding that an insurer is not estopped from asserting its policy's limitation defense due to its failure to respond to an insured's letter. The Court therein states:

> Nor is defendant estopped from asserting its defense.... Having received no reply to his letter ... Plaintiff could not be heard to say that he was misled into refraining from filing his action for the reason that negotiations for settlement were still in progress. [citations omitted].

61 A.2d at 410.

First Federal's reliance upon the Delaware Unfair Trade Practices Act, 18 *Del.C.* § 2301, *et seq.,* is misplaced. Assuming *arguendo* the statute's application to lawyers when they represent insurers [the statute's purpose being "... to regulate trade practices in the business of insurance...."], there was no evidence before the Court that Nationwide's attorney declined to answer letters "... with such frequency as to indicate a general business practice....", 18 *Del.C.* § 2304(16), or that conduct in a single transaction may constitute a violation of the Act. Therefore, the absence of a response by Nationwide is not evidence of estoppel.

First Federal contends that Superior Court erred in drawing several inferences adverse to First Federal, the nonmoving party. It contends that the Court erroneously characterized Nationwide's November 11, 1980 letter (wherein Nationwide indicated its willingness to settle for the $18,-485.78 actual cash value of the dwelling) as a "firm offer." First Federal argues that actual cash value was not provided for in the policy and that it was mentioned for the first time as a measure of recovery in Nationwide's November 11 letter. This, it contends, created a reasonable inference that no firm offer was intended and that negotiations were to continue. First Federal also argues that nothing in the record shows that its attorney was aware of the policy suit limitation. We find no rational basis in the record for such inferences.

A rational finder of fact could only conclude from the exchange of letters between the parties that First Federal had unequivocally rejected Nationwide's settlement offer and had countered with a final "take it or leave it" offer of a substantially higher amount. In that context, it could be inferred that the parties had reached a deadlock and that settlement was not possible. Further, as early as September, 1980, First Federal's attorney was quoting from provisions of the policy "deep within" it; and by the anniversary date of the fire, if not before, he had been instructed to file suit.

Under the controlling facts, neither Nationwide's words or conduct (particularly after receipt of First Federal's letter of December 2), may reasonably be found to have misled First Federal and to have been relied on by First Federal to its detriment. Further, no rational trier of fact can conclude from the evidence that First Federal's counsel was "permissibly ignorant" of the suit limitation clause or that he was somehow lulled into believing that there was no need to file suit within the policy limitation period. *Ottendorfer v. Aetna, supra; compare Closser v. Penn Mutual, supra.*

Having raised estoppel, First Federal has failed to establish any triable issue. Thus, Superior Court was correct in finding First Federal's suit to be time barred; and the Court's grant of Nationwide's cross-motion for summary judgment must be affirmed. For the reasons stated above, we also find that Superior Court's denial of First Federal's motion for reargument based on *Allstate Insurance Co. v. Spinelli, supra,* was not an abuse of discretion.

\* \* \*

Affirmed.